# CHARLESTON.

HUTTON *et al. v.* LOCKRIDGE *et al.*

Decided February 5, 1883.

(*SNYDER, JUDGE, Absent.)

1. When a process of *supersedeas* issued by the clerk of the Supreme Court of Appeals states in accordance with the transcript of record, that the decree superseded was rendered by a certain circuit court on a certain day, and no decree was rendered by the said court on that day, but a decree was rendered on the day succeeding the one named in the process, and no other decree had been rendered in said cause, which could be supposed to be the one, which the Appellate Court had superseded, such process is not void and inoperative. (p. 259.)

2. If after such process has been served on a special receiver, who by such decree had been authorized to rent out the real estate of the defendant, he proceeds to rent the same but announces publicly on the day of the renting, that if the Appellate Court on being applied to should hold such process effective, he would return to

*Judge S. absent on account of sickness.

the renter his bond and repay his cash-payment and not report the renting to the circuit court, and the Appellate Court is satisfied, that he always intended to make such application to it to ascertain, whether such process was effective, before he placed the renter in possession of the property, and before he reported the renting to the court, it will not punish such special receiver for a contempt of the court because of such disobedience of its lawful process, the act of disobedience not having been consummated so as to injure any one, and no contempt being intended. (p. 260.)

3. But if the special commissioner in such a case delays to make an application to the Appellate Court to ascertain, whether such process was effective, and the defendant moves the court to issue a rule against him for contempt, the court, though declining to punish him for contempt, will adjudge against him the costs of the proceedings. (p. 261, 262.)

A rule for contempt against John Osborne, special receiver in a cause then pending in the circuit court of the county of Pocahontas, wherein J. C. Hutton and others were plaintiffs and J. T. Lockridge and others were defendants.

GREEN, JUDGE, furnishes the following statement of the case:

On April 29, 1879, the circuit court of Pocahontas rendered a decree in three causes, which were heard together, one of which was the cause of J. C. Hutton and others, plaintiffs, against James T. Lockridge and others, defendants. By this decree it was ordered among other things, that, unless the said James T. Lockridge should within thirty days pay to certain creditors certain debts and the costs of their suits, certain persons appointed commissioners should after a specified advertisement sell certain lands of the said Lockridge to pay the same.

On the petition of said Lockridge, on September 8, 1879, an appeal with *supersedeas* to this decree was awarded by a judge of this Court, and the *supersedeas* was perfected by the giving of the required bond. At a term of the circuit court of Pocahontas county, which commenced on October 16, 1882, while this cause was on said appeal and *supersedeas* to said decree of April 29, 1879, undecided in this Court, said circuit court rendered a further decree in said cause of *J. C. Hutton et al.* v. *James T. Lock-*

*ridge et al.*, whereby it was ordered, that John Osborne as a special receiver after a specified advertisement should rent out said lands of the said Lockridge for one year from March 1, 1883, so much to be paid in cash by the renter, as would pay the costs of such renting, and the balance on a credit of twelve months to be secured by bond with good personal security ; and this special receiver was required to give such a bond with security, as the law requires. This decree was rendered on October 17, 1882, and was the only decree, which was rendered in said court at the said term commencing on October 16, 1882, or at any other time since said decree of April 29, 1879, which had been superseded.

On the 9th day of December, 1882, upon the petition of said Lockridge this Court granted an appeal and *supersedeas* to this decree rendered at the October term, 1882. The petition correctly describe this decree as rendered at the October term, 1882, of the circuit court of Pocahontas and in said cause; but it does not specify on what day it was rendered, though with this exception the description is correct. Upon the granting of said appeal and *supersedeas* by this Court, the clerk of this Court on December 19, 1882, issued a summons against the appellees in said appeal, and in this summons he describes the decree appealed from and superseded as rendered by the circuit court of Pocahontas county on the 16th day of October, 1882, in said cause. The time when this decree was rendered was taken from the transcript of the record, which accompanied the petition for an appeal and *supersedeas*, which had been presented by said Lockridge to this Court. The clerk of the circuit court of Pocahontas having commenced this transcript as proceedings, "at a circuit court held for the county of Pocahontas on the 16th day of October," carelessly omitted to state when this decree was rendered; but went on immediately after this heading to copy the decree, which states, that it was rendered "this day." The clerk of this Court therefore justly concluded, that this decree was rendered on the 16th day of October, 1882, and so described it in his summons. This summons was served on John Osborne, said special receiver, on the 30th or 31st of December, 1882.

Before this summons was served on him, the required

*supersedeas* bond had been executed and approved. This bond correctly describes the decree, which had been superseded, as a decree "rendered at the October term, 1882, of the circuit court of Pocahontas." It does not state on what day it was rendered, but it corresponds with the petition for the appeal and *supersedeas* on which the court had awarded a *supersedeas*. But, though served with the summons, the special receiver, John Osborne, proceeded on January 2, 1883, to rent out said lands at a public renting pursuant to a notice to that effect, which he had made prior to the awarding of the *supersedeas*. He made known publicly on the day of the renting the fact, that he had been served with this process or summons issued by the clerk of this Court and said, that if this Court held this process or summons effective he would surrender the renter's bond, return his cash payment and make no report of the renting to the circuit court. After giving this notice he rented publicly these lands, took of the renter the cash payment and his bond for the residue of the rent pursuant to said decree of October 17, 1882.

On the 18th day of January, 1883, on the affidavit of James T. Lockridge, this Court issued a rule against John Osborne, the special receiver, to show cause why he should not be fined and attached for contempt of the process of this Court in renting the said lands after said process of this Court had been served upon him. This rule was returnable to this Court on the 20th day of January, 1883, at which time said John Osborne filed his answer on oath admitting in substance, that the facts of the case were substantially as above stated. The admissions in his answer and an affidavit of the clerk of the circuit court of Pocahontas county also filed, and the record and papers, which have been filed in this cause, when examined show, that all the facts which can have any bearing on the question, whether the said John Osborne should be fined and attached for a contempt of this Court in this matter, are as above stated.

In his answer he states, "that he verily believed the bond given by the appellant, James T. Lockridge, to pay all costs and damages by reason of an appeal from a decree rendered on the 16th day of October, 1882, would not be operative for any costs and damages, which might be sustained by reason

33

of the plaintiff in the circuit court causing to be executed a
a decree, which had not been appealed from or suspended."
He also states, that "he as an officer of said circuit court
was liable to be attached and fined for failing or refusing to
obey its mandate; that as such officer he regarded it as his
official duty to proceed to execute the decree of October 17,
1882, unless specifically suspended and, that it was not sus-
pended by a *supersedeas* referring to a decree of October 16,
1882." He further states, that "he did not intend any con-
tempt of this Honorable Court; that he acted as he believed
he was in law bound to do and as the process of the court
below directed him to do, and that he did not and would not
willingly and knowingly abuse or contemn the process of this
Honorable Court."

*Dennis & Dennis* for Lockridge.

*Samuel Green* for Osborne.

GREEN, JUDGE, announced the opinion of the Court:

This Court may issue attachments for contempt and fines
summarily in cases of disobedience, by any person, to any of
its lawful processes or orders. See Code of W. Va. ch.
147, § 27, p. 69, and *State of W. Va. ex rel. Mason* v. *The
Harper's Ferry Bridge Company*, 16 W. Va. pages 875, 876.
The *supersedeas* alleged to have been disobeyed by John
Osborne, special commissioner, was confessedly a lawful
process, but he claims in his answer that he did not disobey
this process, because the *supersedeas* served on him com-
manded him not to execute a decree of the circuit court of
Pocahontas county in the cause of J. C. Hutton and others,
plaintiffs, against James T. Lockridge and others, defend-
ants, rendered on October 16, 1882; and that in renting out
the lands of Lockridge he did so under a decree in said
cause of October 17, 1882, which decree had not been super-
seded. And it is argued by his counsel, that this *supersedeas*
of this Court was wholly inoperative, null and void as there
was no decree in said cause rendered on October 16, 1882,
and the *suparsedeas* on its face only superseded a decree
rendered on the last named day.

The process on its face expressly superseded some decree rendered in this cause. It cannot therefore be a nullity as contended, unless the insertion in it of the wrong date when this decree was rendered makes the *supersedeas* so vague, that its meaning and purpose could not with any certainty be ascertained. If several distinct and substantially different decrees had been rendered in this cause, to any one of which the *supersedeas* of this Court would equally well have applied, and it could not be ascertained which of these several decrees the *supersedeas* was intended to operate upon, it is possible that the process issued by the clerk of this Court might be regarded as inoperative; though even then the far better and more prudent course for the person to pursue, who proposed to carry into execution any one of these decrees would have been, before so doing, to have applied to this Court to ascertain definitely what decree it intended to supersede; and even in that case, if without taking such precaution he proceeded to execute any of these decrees, he might incur the risk of being punished for a contempt of this Court.

In the case before us there can be no possible question as to the decree, which the process issued by the clerk of this Court on December 19, 1882, and served on John Osborne, the special receiver, intended to supersede. There was but a single decree in this cause, which was then in force; all others having been superseded by a former order of this Court and being then before this Court for review. Of course the *supersedeas* must have referred to some decree rendered in this cause since September 8, 1879, when this Court superseded all decrees in the cause prior to that date. The decree of October 17, 1882, directing the lands of the defendant Lockridge to be rented out by the special receiver, John Osborne, was the only decree which had ever been rendered in the cause after the decree of April 29, 1879, which had been superseded. It was therefore unquestionably the decree intended to be superseded by the process issued on December 19, 1882. Nor could the mistake in the process in reciting this decree as rendered on October 16, 1882, instead of October 17, 1882, render in any degree ambiguous the decree intended to be superseded. The special receiver,

John Osborne, must therefore have known, that it was the purpose of this Court by this process to supersede the execution of this decree of October 17, 1882. If he did know this, as must have been the case, it only remains to enquire whether or not he disobeyed this lawful process of this Court.

On January 2, 1883, as such special receiver under this decree of the circuit court rendered October 17, 1882, he rented out the real estate of the defendant, Lockridge, at public auction. But this renting he did not report to the court, and unless so reported it would be inoperative. He did then an act, which was the initiatory step in disobeying the lawful process of this Court and he is punishable therefore unless it clearly appears, that he injured no one and never intended to consummate this act of disobedience. This court may properly punish one, who has done anything in disobedience of its lawful process though he has not consummated his act of disobedience unless he can show, that he never thereby injured any one and never intended to consummate the act and make it operative. The excuses which he makes in his answer, that he was apprehensive that the circuit court might punish him if he did not execute the decree of October 17, 1882, and that he regarded the process of this court as a nullity as it superseded a decree said to have been rendered on October 16, 1882, when no decree was rendered on that day, are not valid excuses. He had no reason to apprehend, that the circuit court would punish him for not executing the decree of October 17, 1882, as that court must have known that this decree had been superseded by this Court. He must, therefore, be punished by this Court for his disobedience of the lawful process of this Court, unless we are satisfied, that he never injured any one thereby and never intended to consummate his act of disobedience, the first step of which he took by renting publicly the real estate of the defendant, Lockridge, on January 2, 1883.

Did he injure any one thereby or did he ever intend to consummate this act? He injured no one; as possession of the property was not to be given to the renter till some two months after the renting, and, when he rented this property, he publicly proclaimed, that he had been served with the process of *supersedeas* of this Court; and he stated, that if the

Court held this process effective he would surrender the renter's bond, return his cash payment and not report the renting to the circuit court. It seems to us but just to him to construe this conduct, as though he had announced his purpose of applying to this Court and ascertaining, whether it considered the process issued by our clerk as effective or as a mere nullity. And so construing his conduct, if he had followed this declaration up by applying to this Court a week afterwards, when it met on January 10, 1883, to ascertain whether this process was or was not held to be effective, we could not have held otherwise than that he never did at any time intend to consummate his act of disobedience, and we could not have punished him for a contempt of this Court. But he never did make any such application to this Court. On the contrary the defendant, Lockridge, after waiting more than a week after this Court commenced its session, by his counsel, applied to this Court for a rule against said Osborne, to show cause why he should not be fined and imprisoned for a contempt of this Court in disobeying its lawful process. It is to be presumed, that he took this course, because he did not believe that the special receiver, John Osborne, intended to make any application to this court to ascertain whether it regarded the process issued by our clerk and served on him as effective. He was justified in so doing on account of the unreasonable delay of the special receiver in making such application. As however it was known, that the session of this Court would last for at least two weeks after this rule was issued it seems to us, that it would be harsh in us to draw the conclusion, that the special receiver, John Osborne, did not intend during this term of this Court, to make this application to this Court to ascertain whether the process issued by our clerk was regarded by us as effective. As this may have been his intention we must hold, that he did not intend to consummate his act of disobedience to this Court and that therefore, he ought not to be punished by this Court for a contempt in disobeying the process of this Court. This process is, as we have seen, lawful and effective. The bond too, which has been executed by the appellant and which was required to be given before the *supersedeas* took effect is a valid bond, and furnishes to the

parties all the protection to which they are legally entitled. It does not describe the decree superseded as one rendered on October 16, 1882, as did the process, but correctly describes it as a decree rendered in said cause at the October term, 1882, of said court.

Though we decline to punish the special receiver, John Osborne for a contempt of this Court yet, as we have seen, his conduct has been such as to justify the defendant, Lockridge, in asking of this Court a rule against him; and therefore the defendant, Lockridge, must recover of him his costs expended in the prosecution in this Court of this proceeding; but the rule must be discharged.

JUDGES JOHNSON AND WOODS CONCURRED.

RULE DISCHARGED.